(Decided November 25th 1864.)

---

THOMAS PHIPPS, GEORGE WILLIAMS AND R. FORD *vs.* STATE OF MARYLAND.

CODE ART. 71, SECS. 15, 16, 17 AND 18, RELATING TO THE BEDDING OF OYSTERS: INDICTMENT: DEMURRER: GRANT OF LAND COVERED BY NAVIGABLE WATER.— The 17th section of Art. 71 of the Code, authorizes any citizen of any county bordering on the waters of the State, to locate and appropriate within the waters thereof, any area, not exceeding one acre, for the purpose of depositing and bedding oysters, on condition that the area so located should not interfere with any right reserved by the 15th and 16th sections, nor impede the navigation of navigable waters, and that it should be marked out by stakes or other proper bounds, and a written description thereof under oath, recorded in the office of the Clerk of the Circuit Court of the proper County. Section 18 of the same Act punishes the offence of taking oysters from any one of the deposits or beds authorized by the three preceding sections. On a demurrer to an indictment under section 18—HELD:

1st. That the said sections of Art. 71 of the Code, are not in violation of the Constitution of the State; they subtract nothing from the common right

of fishery, nor do they operate as a grant of several rights from the common right.

2nd. That the said sections were not repealed by the Act of 1861, ch. 129, which provided—"that no patent should issue for lands covered by navigable waters," the sole object of said Act being to restrict and limit the powers of the Commissioner of the Land Office.

3rd. It is settled that the lands of the State covered by navigable water may be granted, subject to the public right of navigation and fishery; and independent of the question, as to the power of the Legislature to restrain those rights by grants in severalty, it is clear that they may be aided by grants conferring particular privileges.

4th. The power of the Legislature to authorize the erection of wharves and the reclamation of land from the water for the purpose of encouraging navigation and commerce, has never been questioned, notwithstanding the effect has been to confer privileges and advantages wholly private and exclusive in their character; and there appears to be no substantial reason why it may not, in like manner, grant privileges affording particular and exclusive benefits for the purpose of increasing generally the product and value of the common right of fishery.

5th. The privilege conferred by section 17, is not a grant of lands binding upon the State, nor is it a grant of several or exclusive rights of fishery in navigable waters, but a conditional license revocable at the pleasure of the Legislature.

6th. That the indictment was defective in not averring the location and appropriation of the depots by the party locating and appropriating the same, and the perfecting of his right or privilege therein by recording the written description thereof as required by section 17, before the oysters were removed by the traverser.

APPEAL from the Circuit Court for Anne Arundel Co.

The appellants were indicted at the October Term 1862 of the Circuit Court for Anne Arundel County, for a violation of sections 17 and 18, of Article 71, of the Code of Public General Laws, in taking oysters from the "depot" of Benjamin Davis. The traversers demurred to the indictment; the Court below, (BREWER, J.,) overruled the demurrer, and the verdict being against them, they prosecuted this appeal.

The cause was argued before BOWIE, C. J., and BARTOL, and COCHRAN, J.

*William H. Tuck* and *A. B. Hagner*, for the appellants:

1. As to the sufficiency of the indictment:

1st. It was incumbent upon the State to aver the location and appropriation of the "depot," in the mode prescribed by the law; and it was as important to the legality of the location that it should not violate any of the inhibitions of the Act, as that it should conform to all its requirements. One of these inhibitions is stated at the close of the 17th section, in these words: "but no such location or appropriation shall be made to interfere with the rights reserved by the two preceding sections." The State's attorney has undertaken to aver that the location, &c., did not interfere with the rights reserved by those sections, but he has done so by the general averment that it did not "interfere with the rights reserved to any citizen of the said State, and did not interfere with the rights of any other person whatsoever."

This is altogether too vague an averment, and wanting in that precision and particularity required in indictments of this description. *Wharton's Am. Crim. Law, secs.* 285, 364. 10 (2) 299, 371, 304, 379. *Pugh vs. Robinson*, 1 *T. R.*, 69. *State vs. Scribner*, 2 *G. & J.*, 246. *State vs. Bode*, 1 *Gill*, 326. *State vs. Hoofman*, 9 *Md. Rep.*, 28. *State vs. Franklin*, 12 *Md. Rep.*, 244. *King vs. Holland*, 5 *T. R.*, 617, 621. *Bishop of London vs. Flytche*, 1 *East*, 495.

2nd. The 29th sec. of the Article points out the Courts which shall have jurisdiction in these cases. If the offence is committed within a county, the Circuit Court of that county shall have jurisdiction; if in a creek or river dividing two counties, the Circuit Court of either county shall have jurisdiction; or if committed within the waters of the State but not within the limits of any county, then jurisdiction is committed to the Circuit Court of the county lying opposite, &c.

Phipps et al. *vs.* State,

The indictment then should show whether the offence was committed within Anne Arundel County, or in a creek, &c., dividing it from some other county, or in the waters of the State not within the limits of any county, but opposite to Anne Arundel County. But it makes neither of these allegations. And it is not enough to state that it was committed "within the jurisdiction of Circuit Court for A. A. Co.,"—for this is a conclusion of law, and the indictment must show on its face the facts warranting the conclusion. *Smith vs. State,* 6 *Gill,* 425. *Rex vs. Teag,* 1 *T. R.,* 316. *Parker vs. Elding,* 1 *East,* 252. *Wharton's Precedents,* 6, 17, 97 *and* 123. *State vs. Nutwell,* 1 *Gill,* 55. *State vs. Adams,* 1 *Martin,* 21, 30. *Wharton,* secs. 279, 288, 372. *State vs. Franklin,* 12 *Md. Rep.,* 244. *Rex vs. Frazer,* 1 *Moody, C. C.,* 407. *State vs. Carpenter,* 4 *Foster,* 144.

3rd. The right to the location is not perfect, under the law, until it has been recorded, and any person may catch oysters there before the right is perfected.

This indictment does not state that the offence was committed after the recording of the location. It is alleged to have been committed on the same day, *non constat* but that the oysters were caught before the paper was filed. *Osborne vs. Marcine,* 3 *Wendell,* 17. *Sharer vs. Shoemaker,* 6 *Watts & Serg.,* 179. *Williamson vs. Farrar,* 1 *Bailey,* 618. *Leslie vs. Garland,* 15 *Vesey,* 257. *In re Richardson,* 2 *Story's Rep,* 571. 1 *Ball & Beatly,* 193.

4th. The indictment ought to shew that the oysters taken by the accused had been deposited there by Davis. The law does not mean that any person may appropriate a natural bed of oysters, and exclude all others. *State vs. Bode,* 7 *Gill,* 326. *Rex vs. McGregor,* 3 *Bos. & Pul.,* 106.

2. We insist that the Act in question is unconstitutional, because:

The privilege conferred by this law is in derogation of the common right in every citizen of taking oysters in

the waters of the State, and of public fishery therein in general. This right resides in the the body of the public, and they cannot be deprived of it either by a direct exclusive grant thereof to any individual, nor by any general Act under which particular individuals may obtain exclusive privileges. 1861–2, ch. 129. *Shephard vs. Levesan,* 1 *Pennington,* 286. *Arnold vs. Munday,* 1 *Halsted,* 65. *Waddell vs. Martin,* 16 *Peters,* 400. *Weston vs. Sampson,* 8 *Cushing,* p. 347. *Brinkerhoff vs. Starkins,* 11 *Barb.,* 249. *State vs. Taylor,* 3 *Dutch.,* 117. *Vattel Law of Nations,* ch. 20. sec. 246. *Schultz on Aquatic Rights,* 24 *Law Lib.,* m. pp., 68 *and* 80. *Revised Laws of Va.,* 452. *Revised Stat. of Maine,* ch. 61. sec. 4.

*James Revell,* for the State.

All that is necessary in the case of a party indicted under sec. 18 of Art. 71 of the Code is, that the indictment should describe with certainty, which of the classes of depots described in the three previous sections, he has infringed upon, in order that he may not be again indicted for the same act. It is therefore impossible to read this indictment without seeing that it describes with all the certainty required by the strictest rules of interpretation, a depot defined and described in the 17th section, and that a conviction under this indictment could be pleaded in bar to an indictment for the same act, as a taking from a depot described in either the 15th or 16th sections. *Wharton's Am. Crim. Law,* secs., 364,–378. *State vs. Dent,* 3 *G. & J.,* 10. *State vs. Price,* 12 *G. & J.,* 260. *State vs. Cassell,* 2 *H. & G.,* 410. *Rex vs. Pemberton,* 2 *Burr,* 1036. *People vs. Pettit,* 3 *Johns. N. Y. Rep.,* 504. *Parkinson vs. State,* 14 *Md. Rep.,* 199. *Act of* 1858, ch. 55.

But even were it necessary to negative the 15th and 16th sections, it will be argued that the indictment sufficiently avers that the location made by Davis, does not

interfere with the rights reserved by secs. '15 and 16. *Parkinson vs. State*, 14 *Md. Rep.*, 199. *Code, Art.* 30, *sec.* 82, *page* 225.

2nd. The objection that the indictment does not aver sufficient facts, to show the jurisdiction of the Court within the 29th section, Art. 71, is also, it is respectfully submitted, untenable, it avers that Davis was a citizen of the State and of Anne Arundel County, which county bordered on the waters of this State, and that he located in the waters aforesaid, bordering on the county aforesaid, his depot, and that the appellants unlawfully took oysters from the depot so located; this of itself is a sufficient averment of facts to bring the case within the jurisdiction of the Circuit Court for Anne Arundel County, under section 29, and justifies the averment as a conclusion of law, if it is so to be regarded, that the offence was committed within the jurisdiction of that Court. But independent of this view, the indictment sufficiently avers jurisdiction when it avers that "at the county aforesaid" Davis made his location, &c., and that the appellants "at the county aforesaid, unlawfully took oysters from the depot so located." This surely, is also an averment of fact, giving jurisdiction to the Court below. But again, the averment is an averment of fact, that the offence, was committed at the county aforesaid, within the jurisdiction of the Circuit Court for said county. And again, under the provisions of the Code it was not necessary to aver the facts constituting jurisdiction, in the body of the indictment. *Code, Art.* 30, *sec.* 82, *p.,* 225. *Kellenback vs. State*, 10 *Md. Rep.*, 431, &c. *Cochrane vs. State*, 6 *Md. Rep.*, 400, &c. *Cowman vs. State*, 12 *Md. Rep.*, 250. *Wedge vs. State*, 12 *Md. Rep.*, 235. *Cushwa vs. State*, 20 *Md. Rep.*, 277.

3rd. The indictment properly avers the location and recording of that location on the 6th of September 1863, and that the appellants on that day, unlawfully, and in

violation of the rights of Davis, took the oysters from the depot so located and appropriated. Now, if the appellants took the oysters before the location was recorded, it was mattter of defence to be proved to the jury, but not an objection to the indictment.

4th; The objection that the indictment ought to aver that the oysters taken had been deposited in his depot by Davis, is not warranted by the words of the law. All that is necessary to sustain the indictment is that it should state the offence as prohibited by the statute, and in the words of the statute: that has been done. The matter prohibited, is the "catching or taking any oysters or shell-fish within the limits of any depot of any citizen of this State, as described," &c. And the law gives the authority to make such locations "in any of the waters of the State." It is sufficient to charge the offence in the words of the law, and if the fact was that the location was on a natural oyster bed, and none but such oysters were taken, and that it was not the meaning of the law to embrace such a case, then this was also matter of defence to be proved, and the construction of the law submitted to the Court or jury, who, under the constitution and law, are made judges of both law and fact. Maryland Constitution, Art. 10, sec. 5. See authorities refered to in first point.

If the indictment follows the language of the law in describing the offence, it is no objection to it that the law does not embrace such a case. But it will be further maintained, that upon the plain words of the law, location may be made even of a natural oyster bed, and the taking of such oysters after such location is an offence within the meaning of the Act. Code, Art. 71, sec. 17.

5th. The objection to the constitutionality of the law is also, it is submitted, not valid. The object of the law was to protect the oyster fishery, and encourage the oyster trade. It is not the grant of any inheritable estate in the

land, but a mere privilege granted to those engaged in the business of supplying our markets with oysters. There is no prohibition either in the Constitution of the United States or the State of Maryland, against such legislation. *Vattel, B. 1, ch.* 20, *sec..*246. *Revised Stat. Maine, ch.* 61, *sec.* 4. *Moulton vs. Libbey,* 37 *Maine,* 494. *Com. vs. Chapin,* 5 *Pick.,* 99. *Fuller vs. Spear,* 14 *Maine,* 417. *Lunt vs Hunter,* 16 *Maine,* 9. *Nickerson vs. Brackett,* 10 *Mass.,* 212. *Smith vs. State of Maryland,* 18 *Howard,* 75. *Peables vs. Hannaford,* 18 *Maine,* 106. *Baker vs. Wentworth,* 17 *Maine,* 347. *Dunham vs. Lamphere,* 3 *Gray,* 268. *Ducker vs. Fisher,* 4 *Barb.,* 592. *Fleet vs. Hegeman,* 14 *Wendell* 42. *Rogers vs. Jones,* 1 *Wendell,* 237–260. *Coolidge vs. Williams,* 4 *Mass.,* 145. *Bennett vs. Boggs,* 1 *Baldwin,* 63–76.

COCHRAN, J., delivered the opinion of this Court.

The questions to be considered in this case arise on a demurrer to an indictment for violating the 18th section of Article 71 of the Code. In disposing of the appeal, we are called on to decide: 1st. Whether the 17th and 18th sections of this Article are constitutional: and 2nd. The more general question as to the sufficiency of the indictment founded on them. The 17th section authorizes any citizen of any county bordering on the waters of the State, to locate and appropriate within the waters thereof, any area, not exceeding one acre, for the purpose of depositing and bedding oysters, on condition that the area so located should not interfere with any right reserved by the 15th and 16th sections, nor impede the navigation of navigable waters, and that it should be marked out by stakes or other proper bounds, and a written description thereof, under oath, recorded in the office of the clerk of the Circuit Court of the proper county.

The constitutionality of the section is questioned on the ground that it confers special and exclusive privileges

inconsistent with, and in derogation of the common right of free fishery in the waters of the State. It was also suggested that this section, even if the Legislature had power to enact it, was repealed by the Act of 1861, ch. 129, before the location shown in this case was made. We, however, attach but little importance to this suggestion, as the sole purpose of the provision referred to in that Act,—"that no patent should issue for land covered by navigable waters,"—was to restrict and limit the powers of the Land Commissioner, and nothing more. The effort to subject section 17th of Article 71 to the operation of the Act of 1861, appears to have been made with some misapprehension of the true nature of the question to be decided.

It abundantly appears from the nature of the privilege in dispute, as well as from the terms in which it was conferred, that no transfer of the State's title to lands covered by navigable water was contemplated. Permission to use given areas, covered by navigable water for a particular purpose, seems to be all that the Legislature intended, and we think the language of its assent to that use should be construed, not as a grant binding the State, but as a conditional license, revocable at the pleasure of the Legislature.

It is true that it contemplates several and exclusive privileges, and it may be said, privileges that constructively abridge in some qualified sense, the common right of the public, although the abridgment of the public right does not constitute the main element of the privilege. The license simply proposes means for the protection of private rights, existing independently of the means. Oysters taken by one in the exercise of his common right of free fishery, thereby become the property of the taker, and the whole scope of the privilege conferred appears to be nothing more than permission to use portions of the State lands covered by navigable water as

places of deposit, where the title and possession of the property thus acquired may be continued and protected. As we construe it, this privilege subtracts nothing from the common right of fishery, nor can it be said to operate as a grant of several rights from the common right, residing in the body of the people. The natural beds or deposits of the oyster do not extend to all the waters of the State, and at most, the argument that the common right to fish for and take them is impaired by the artificial deposits here authorized, would hold good only on proof that a natural bed or deposit is appropriated to the artificial use. It is settled that the lands of the State covered by navigable water, may be granted, subject to the public right of navigation and fishery; and independent of the question, as to the power of the Legislature to restrict those rights by grants in severalty, it is clear that they may be aided by grants, conferring particular privileges. The power of the Legislature to authorize the erection of wharves, and the reclamation of land from the water, for the purpose of encouraging navigation and commerce, has never been questioned, notwithstanding the effect has been to confer privileges and advantages wholly private and exclusive in their character. And there appears to be no substantial reason why it may not, in like manner, grant privileges affording particular and exclusive benefits, for the purpose of increasing generally the product and value of the common right of fishery. The tendency of the privilege, here conferred, is undoubtedly in that direction. It affords the citizen enjoying the common right, the means of preserving, and increasing in value the fruits of his labor,—a result substantially enhancing the worth of the right enjoyed, and contributing also to the general comfort of the people and prosperity of the State. It is not necessary to decide, in this case the very important, and perhaps delicate question, as to the power of the Legisla-

ture to grant several or exclusive rights of fishery in navigable waters, and we forbear the expression of any opinion upon it. It is enough to say that the grant here objected to, does not involve that question. We have examined with much care, the authorities referred to in course of the argument, and in accordance with the general current, do not hesitate in saying, that the Legislature did not exceed its power in granting the privilege here drawn in question.

The remaining question as to the sufficiency of the indictment, would seem to be free from difficulty. The offence charged, is a violation of the 18th section, and it was unquestionably necessary for the State to show, on the face of the indictment, all the facts necessary to constitute the offence. In that particular it should be explicit and certain, and nothing left to inference. That could not be done in this case without averring the location and appropriation of the depot by Davis, and the perfection of his right or privilege therein, by recording the written description thereof, as required by the 17th section, before the oysters were removed by the traversers. We find by inspection, that the indictment does not allege the material fact, that the oysters were removed after the right of Davis to the depot was perfected by recording the description of it in the Clerk's office. It avers generally that the offence was committed on the 6th of September 1862, and that the description was recorded on the same day, but whether it was committed before or after recording the description, does not appear. In this respect the indictment was defective, and without examining further, we shall reverse the judgment on that ground.

*Judgment reversed.*

(Decided November 25th 1864.)