Spear, J.
The indictment is founded on section 6915, Revised Statutes, which reads as follows: “Whoever, being a county commissioner, is guilty of any misconduct in office, shall be fined not more than four hundred dollars, and forfeit his office, ”
Many questions arise upon the record, but we find it necessary to consider only that relating to the sufficiency of the indictment, and two of those relating to the competency of testimony.
1. The indictment. Is venue sufficiently alleged?
The indictment shows that it. was found by the grand jury of Wood county, and presented to the court of common pleas of that county; that the jury had been empanelled, sworn and charged to inquire of crimes and offenses committed within that county; and that the defendants, late of that county, were on the 3d day of May, 1893, then and there county commissioners in and for that county, duly elected and qualified, etc. Then follow allegations to the effect that defendants, as such commissioners, on the 3d day of May, 1893, *375 declared their purpose to erect a new court house in and for the county of Wood, etc., and that “thereupon, on said 3d day of May, A. D. 1893, said Jacob Stahl, Samuel Knight and James Gibson, as such county commissioners as aforesaid, did unlawfully, wilfully, knowingly and corruptly make and enter into a certain contract with a partnership then and there doing business under the firm name and style of Yost & 'Packard, whereby they employed the said Yost & Packard to make plans and specifications for and supervise the erection of said new court house,” etc. Nowhere in the instrument is there any allegation that the offense was committed in the county of Wood. Indeed, every allegation of the indictment might be fully proven as stated, had the entire transaction occurred outside the limits of the county, and for that matter the state.
It is elementary, we suppose, that an indictment, in order to be sufficient, must aver, with reasonable certainty, all the material facts necessary to a conviction. Nothing is to be left to intendment or inference which is necessary to prove in order to make out the crime. State v. Philbrick, 31 Maine 401; U. S. v. Hess, 124 U. S. 483 ; Am. Eng. Enc. of Law, vol. 19, p. 566, and authorities cited.
Venue is one of the essentials of an indictment for a number of reasons. One is that it must appear that the court to which the indictment is presented has jurisdiction of the offense. Another that the defendant may be informed of the charge in this respect so that he may be prepared to meet it. A third is that the judgment may be pleaded in bar to any second indictment for the same offense. The State v. Cotton, 4 Foster, 143; Bish *376 op’s Crim. Proc., p. 225. And that the prosecution must be had in the county where the unlawful act was committed, was held by this court in the recent case of The State v. Knight et al., 35 W. L. B., 175.
It is insisted by counsel for the state that venue suffiicently appears, and that whether it does otherwise or not, it must be inferred that the criminal acts were committed in the county of Wood because it is charged that the defendants made the contract as county commissioners, and the only possible place where such a contract could be made was within the county of Wood. If it were conceded that the commissioners could not legally make such a contract outside the limits of Wood county, yet it would not follow as a legal conclusion that the transaction did not occur outside the county, for manifestly the acts were such as it was possible to commit without the county; especially does it not follow in view of the character of the prosecution. As pithily observed by counsel for plaintiff in error: “ They 'cannot be presumed to have followed the law, as they are expressly accused of violating it. To infer that they acted lawfully in this respect in order to support a charge that they acted unlawfully in another respect would be a strange application of legal presumptions. ’ ’
But, be'this as it may, the claim cannot be maintained for, as already stated, the indictment must be explicit, and leave nothing to mere inference. Am. & Eng. Ency. of Law, vol. 10, p. 567; Phipps et al. v. The State, 22 Md., 380; The State v. Seay, 3 Stewart (Ala.), 123; Smith v. The State, 21 Neb., 552; U. S. v. Morrissey, 32 Fed. Rep. 147.
*377 It is further argued that, even though the indictment might not he good at common law, yet it is saved by section 7215, Revised Statutes, called the statutes of Jeofails. The clauses of that section which bear relation to this question are these: “No indictment shall be deemed invalid * * * for want of an allegation of the time or place of any material fact, when the time and place have been once stated in the indictment; * * * nor for want of averment of any matter not necessary to be proved; nor for any other defect which does not tend to the prejudice of the substantial rights of the defendant upon the merits. ”
The proposition is not tenable. If allegation of place of the offense had “ once been stated in the indictment,” then by proper incorporation of “then and there” at other places where allegation of place is wanting, the requirement of certainty might have been assumed, but we have found that the instrument is barren of any allegation of place. Now, can it be said that the place of the offense, i. e., the county, was not necessary to be proven, for how could a conviction be sustained without it? Neither can it be said that the question of [place did not affect the substantial rights of the defendants, for how, if not alleged, could they intelligently prepare their defense, or how could the record serve the defendants as a bar to a second prosecution for the same offense ? In general terms it may be said as to this defect that the indictment fails to aver' all the material facts necessary t<? a conviction. Lamberton v. The State, 11 Ohio, 282. And such failure is fatal, as well since the statute as at common law. Ellars v. The State, 25 Ohio St., 385. The demurrer to the *378 indictment should have been sustained. It was error to overrule it.
2. Evidence. Against objection and exception by defendants, the state was permitted to introduce testimony tending to show that on the 9th ' day of April, 1893, at Akron, in Summit county, the defendants, Knight and Gibson, proposed to one Weary, an architect, to let the architect’s work on the proposed court house to him for a money consideration to be paid by him to the defendants. If made out, this was a violation of section 6900, Revised Statutes, which makes it an offense for an officer to solicit a bribe. In other words it was - an attempt to prove a distinct offense, committed at .another time, in no way connected with the charge in the indictment.
This charge, the trial court assumed, was naturally separable into two phases respecting the motive inducing the conduct of the commissioners into making the contract with Yost & Packard. One involved the element of corruption from a hope or expectation of personal g’ain; the other the element of culpable, narrow-headed stubbornness. The first was practically eliminated by the charge as will be shown more fully further on; and to the other the court charged the jury as follows: “If a law which charges a duty upon a public officer is disobeyed and violated by him from passion or prejudice, or from a spirit of wilful, improper opposition, that is just as corrupt as if he had in violation of existing law, acted from a money consideration. ” The contention of the state is that the testimony was relevant to the latter theory; that it tended to make manifest the motive of the commissioners in dealing with Yost & Packard; to illustrate and give color to their *379 acts; while the claim of the plaintiff in error is that it was not competent as applied to either phase of the case.
It is fundamental, as a general proposition, that proof of one offense is not competent in order to prove that the party committed another distinct, unrelated offense. Such facts are regarded as collateral.. A reason for the rule excluding testimony of collateral facts is given by Prof. Greenleaf, volume 1, section. 52: “ That such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and moreover, the adverse party having had no notice of such a course of evidence, is not prepared to rebut it. ” And yet there are cases where such evidence is admissible, although it may tend to prove the commission of another crime, being in the nature of exceptions to the general rule. One frequently met with in practice is that of admitting such testimony where proof of scienter is necessary, as in the case of passing other counterfeit money in order to show that the party knew the money, the subject of the crime, was counterfeit. Another instance is where the occurrence charged and the one sought to be proven were parts of a single crime, connected by unity of plot and design, and thus in effect one transaction. So, too, such testimony is sometimes admitted in order to show a motive in the mind of the accused inducing the crime charged, as in case of murder by a husband of his wife, proof of adultery with a paramour is admissible in order to show motive prompting the guilty party to get rid of the victim; although in such case it would hardly be claimed that evidence of the killing of a former wife could be admitted to show a tendency on the part of the accused to *380 kill his wives. Other exceptions are recognized, but it is not necessary to pursue the inquiry further in that direction here. The subject is discussed more or less in the following text books and cases: Barton v. The State, 18 Ohio, 221; Farrer v. The State, 2 Ohio St., 54; Brown v. The State, 26 Ohio St., 176 ; Coble v. The State, 31 Ohio St., 100; Commonwealth v. Tuckerman, 10 Gray, 173; The State v. Lapage, 57 N. H., 245; The People v. Sharp, 107 N. Y., 427; Wharton’s Crim. Ev., par. 45 and notes; Commonwealth v. Campbell, 7 Allen, 541.
One thing is apparent in the case before us.. The testimony was, on its face, open to thé objection that its admission would violate the well-established sanction of the law already adverted to. Therefore it was incompetent unless it should be brought clearly within one of the recognized exceptions.
It is difficult to see how the conversation with the witness Weary, as bearing upon the .ease on trial, tended to show more than a desire to be bribed. Equally difficult is it to perceive why evidence of any other like dishonest act would not have the same effect, and would not have been equally competent. The natural inference drawn by the jury would be that these persons, being shown to be of evil mind, probably committed the offense charged, and. this would be clearly inadmissible. How, in reason, could the testimony be said to bear upon their knowledge that their acts in entering into the contract with Yost & Packard were unlawful? Or, would the temptation to accept a bribe be stronger when presented in the making of a contract which the parties knew they had not authority to make than it would be when connected with a contract otherwise lawful? And how, we inquire, unless this were so, could the testimony *381 serve to illustrate or give color to the charge of passion, prejudice or a spirit of wilful opposition, since it tended to disclose a state of mind apparently in no way related to this condition and purpose? At best, the relevancy of this testimony is matter of very serious doubt. In such an aspect of the question it is always safer to exclude; A majority of the court is satisfied that the testimony did not fall within any recognized exception to the general rule, and should not have been admitted.
But if there should remain doubt as to the claim of error in admitting the testimony for some purpose, there seems no room to doubt that it was left to the jury in a way to be used for an improper purpose. Both counsel for the state, and the court, informed the jury that there was no claim that Yost & Packard were in any way guilty of wrong-doing, the lauguage of the court on that point being: “It has already been stated in the trial, by counsel for the prosecution, and very properly under the evidence submitted, that it is not claimed by the state that the contract made between the defendants and Yost & Packard was corrupt,” etc. Logically, this left the transaction with Weary to bear alone upon the other phase of the case. But this the jury might not, and probably would not, understand. It was, therefore, the duty of the court, having admitted the testimony for the purpose, as argued, “of showing motive in their own minds for desiring the seclusion of their own number rather than the company of the building committee,” to limit it to that consideration in the charge to the jury. This was not done. In the charge this language appears: “Incase you find the defendants did act unlawfully as charged in the indictment, then whether the same *382 was done knowingly, wilfully and corruptly, the jury, must determine from all the evidence and circumstances found in the case;” and this is in no way qualified in other parts of the charge. This left it to the jury to make use of the Weary incident that in their judgment was proper; to conjecture, if they were so minded, that the defendants had made a corrupt arrangement with Yost & Packard for a similar unlawful reward, and in general to treat it as tending to prove the commission of the offense charged. This could not fail to be prejudicial to the defendants. Whether or not this omission, had the testimony been competent for any purpose, would be error which the defendant could take advantage of, not having requested a charge limiting the effect of the testimony, is not important, as a judgment of reversal must follow in either view.
Against objection and exception there was admitted, and read to the jury, a protest, dated July 27, 1893, signed by three members of the building committee, and entered on the auditor’s journal, declaring the action of the commissioners illegal, and protesting against it. This action of the committee, having occurred long after the alleged offense of the commissioners, could have had no proper bearing upon the question of their guilt or innocence, and its admission, though. probably not of much consequence as evidence, was clearly erroneous.
For the foregoing errors the judgments below will be reversed and the cause remanded to the court of common pleas with direction to sustain the demurrer to the indictment and for further proceedings according to law.
• Reversed.